UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| O.S., a minor, by his next friend ANITRA BEASLEY and ANITRA BEASLEY individually, ) ) ) ) | |
| Plaintiffs, ) ) | |
| vs. ) ) | Case No. 4:03CV1434  CDP |
| UNITED STATES OF AMERICA, ) ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This Federal Tort Claims Act case is brought by Anitra Beasley as a result her son's suffering a brachial plexus injury during his birth. She alleges that the delivering physician, Jonathan R. Reed, M.D., was negligent in a variety of ways, including in failing to perform a Caesarian Section delivery. Having heard and considered the evidence presented at the bench trial, I conclude that Dr. Reed was not negligent.

## Findings of Fact

Dr. Jonathan R. Reed is employed by the St. Louis Comprehensive Health Center, also known as the Myrtle Hilliard Davis Health Center. The center is a federally funded Community Health Care facility. Anitra Beasley gave birth to her son, O.S., on August 1, 2000, at Forest Park Hospital. Dr. Reed performed the

delivery and had provided pre-natal care. During the vaginal delivery, a shoulder dystocia occurred. After the birth it was determined that O.S. had a brachial plexus injury to his left shoulder. Although his functioning has improved somewhat since his birth, O.S. has a permanent disability as a result of the injury, and is limited in the use of his left arm and hand.

This was Ms. Beasley's second childbirth. Her first child weighed 7 pounds 10 ounces at birth, and she encountered no unusual problems during that delivery. Ms. Beasley herself weighs in excess of 330 pounds. In advance of O.S.'s birth, Dr. Reed expected the baby to be over nine pounds, based on his measurements of the fundal height of Ms. Beasley's abdomen.

Dr. Reed saw Ms. Beasley the day before the birth, and they agreed that labor would be induced the next day. Ms. Beasley reported to the hospital earlier than planned, however, because she lost her mucous plug and believed that labor was beginning. Labor was eventually induced with Pitocin. Ms. Beasley was given an epidural anesthetic. Although there was substantial dispute about this at trial, I find that the labor was not unusually long or protracted, as the active phase of labor was relatively short.

Two friends of Ms. Beasley's were in the delivery room during the delivery of O.S., as was a nurse. When delivery began, Dr. Reed instructed the two friends

to hold Ms. Beasley's legs in the "McRoberts" position. This position, where the legs are pushed, knees bent, up and out, has the effect of allowing the pelvis to be as open as possible during delivery.

A shoulder dystocia occurs when, during delivery, the baby's shoulder becomes stuck against the mother's pubic bone, which, of course, impedes delivery. When Dr. Reed recognized that a shoulder dystocia had occurred in the baby, he instructed the nurse to apply supra-pubic pressure, which she did. When the pressure alone did not allow the delivery to continue, Dr. Reed performed the "Woods Screw" maneuver, which involved reaching to the baby's shoulder to rotate it slightly to allow the baby to come out. This maneuver was successful and O.S. was delivered.

Plaintiff's expert witness opined that Dr. Reed's performance fell below the standard of care in the several ways: he should have performed an ultrasound just before delivery to determine the baby's size; he should have recognized the likelihood of a large baby and so should have discussed with Ms. Beasley, in advance of labor, whether a Caesarian section was appropriate; he should have recognized that labor was not progressing because Ms. Beasley's cervix was not dilating at an acceptable rate, and he then should have performed an emergency Caesarian; when the shoulder dystocia was recognized he should have performed

different maneuvers than those performed; before beginning the intravaginal Woods maneuver he should have performed an episiotomy; and he should have had sufficient professional personnel present so that lay people would not have to perform the McRoberts maneuver of holding the patient's legs.  Ms. Beasley and the two friends who were present also testified to concerns they had during and before the delivery.  They testified that Ms. Beasley was in significant pain even after the epidural, and that they did not believe Dr. Reed was sufficiently attentive.  They testified that although Dr. Reed told them to push on Ms. Beasley's legs they did not do so, and that the position of her legs was different from what the experts testified was expected for the McRoberts position.  They also testified that when the nurse applied pressure to Ms. Beasley during the delivery she applied pressure at the top of the abdomen – which would be improper fundal pressure – instead of the lower supra-pubic pressure that was called for.

  I have considered all this evidence, and I credit the testimony provided by Dr. Reed, by the nurse, and by the defendant's expert.  I am not in any way suggesting that Ms. Beasley or her friends were intentionally untruthful, as it is very understandable that in the stressful situation their memories or perceptions may not have been accurate.  In particular, I find that the McRoberts maneuver was performed as it should have been, and the nurse appropriately applied supra-pubic

pressure, and that Dr. Reed appropriately performed the Woods maneuver.  Having lay people hold Ms. Beasley's legs is not below the standard of care, and did not affect the outcome here.  Both Dr. Reed and the nurse testified as to the manner that the nurse applied the supra-pubic pressure, which included the nurse's actually getting onto the bed so she could lean over Ms. Beasley and be in the appropriate position to apply the pressure.  The pressure was applied appropriately under the circumstances.  Ms. Beasley's size made it necessary for the nurse to lean over Ms. Beasley to reach the appropriate place.  It is understandable, of course, that Ms. Beasley and her friends may have believed something was amiss when the nurse got into the bed and leaned over Ms. Beasley, but under the circumstances here, this was entirely proper.  Additionally, the Woods screw maneuver was necessary and was done correctly.

From all the evidence – including the medical records – I find that the labor was not protracted, and that there was no reason to perform an emergency Caesarian and such surgery would have involved unnecessary risks.  Ms. Beasley's weight would have complicated the surgery and increased the risk of bleeding and infection, there would be risks from anesthesia, and simply moving her to the operating room from the delivery room would have involved risks.  More importantly, there was no need to do surgery, as there was no emergency until the

shoulder dystocia occurred. Once that occurred, of course, it was too late to do a Caesarian. To the extent plaintiff's expert witness had contrary opinions, I credit the testimony of the other witnesses, and find that the defendant's arguments are supported by the medical records.

Neither shoulder dystocias nor brachial plexus injuries are predictable with any certainty; although Ms. Beasley had some risk factors – most significantly her size and the expected size of the baby – reasonable doctors in Dr. Reed's position would not have performed any differently than he did. None of the other claims of negligence that plaintiff's expert raises would have any effect on the health of O.S., or would have made any difference in his brachial plexus injury, so I see no need to discuss them.

### **Conclusions of Law**

This case arises under the Federal Tort Claims Act, 28 U.S.C. §§ 2671 et seq., because Dr. Reed was an employee of a federally funded clinic deemed eligible for FTCA coverage pursuant to the Federally Supported Health Centers Assistance Act of 1992 (Pub. L. 102-501). Dr. Reed was acting within the scope of his duties at all relevant times. Pursuant to the FTCA, the United States is the proper defendant.

The medical negligence law of the State of Missouri applies to govern the

substantive claims here. "To make a submissible case in a medical malpractice action under Missouri law, plaintiffs must prove that defendants failed to use that degree of skill and learning ordinarily used under the same or similar circumstances by members of defendants' profession and that their negligent act or acts caused plaintiffs' injury." Washington by Washington v. Barnes Hosp., 897 S.W.2d 611, 615 (Mo. en banc 1995)(citing Swope v. Printz, 468 S.W.2d 34, 39 (Mo. 1971)). See also Missouri Approved Instructions § 21.01; Sosna v. Binnington, 321 F.3d 742, 744 (8th Cir. 2003).

Here plaintiff has failed to prove that Dr. Reed was negligent. The evidence does not show that he failed to use the degree of skill and learning ordinarily used under same or similar circumstances by members of his profession. There was no reason in this case to perform either a planned or an emergency Caesarian Section; when the shoulder dystocia occurred Dr. Reed appropriately recognized it and performed the appropriate maneuvers to complete the delivery, and did so in a reasonable manner. Dr. Reed's actions did not cause O.S.'s brachial plexus injury.

## Conclusion

Although O.S. undoubtedly suffered a birth injury, and although I am certainly sympathetic to him and to his mother, the evidence simply does not show that the injury was caused by any negligence on Dr. Reed's part. His performance

met the standard of care in all respects. I will therefore enter judgment in favor of defendant.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 27th day of September, 2005.